**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gina Centner, et al., | No. CV-22-00886-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| TMG Utility Advisory Services Incorporated, et al., | |
| Defendants. | |

Before the Court is Plaintiff Paul Paradis's Expedited Motion for Temporary Restraining Order with Notice and Application for Preliminary Injunction and Order to Show Cause (Doc. 49). For the following reasons, the motion is denied.

**BACKGROUND**

In April 2022, Gina Centner ("Centner") and Paul Paradis ("Paradis") filed an action against TMG Utility Advisory Services ("TMG") and Mario Bauer ("Bauer") for retaliatory firing, fraudulent inducement, and promissory estoppel.

In January 2021, Paradis was hired as the Chief Operating Officer of TMG. Mario Bauer was the Chief Executive Officer. Paradis alleges that as part of his compensation package, TMG and Bauer agreed to lease a residential home to be occupied by Paradis throughout the entire term of the lease (February 2021 to February 2023). The lease agreement was completed by Bauer in February 2021. "TMG" was identified as the tenant on the lease, and Paul Paradis was listed as the occupant. As to the rent payments, the lease

states that "Tenant shall pay monthly installments of $5380 . . . ("Rent")" and "Tenant agrees to arrange, and pay for when due, all utilities." (Doc. 55-2 at 43-44.) TMG made the initial payment to the Landlord, which covered the first two months' rent, a refundable security deposit, and a cleaning fee, for a total of $15,076.89. After that initial payment in February 2021, TMG did not make any further payments to the Landlord. Paradis made the monthly rent payments to the Landlord from April 2021 to September 2022.

The crux of the present dispute is whether TMG is obligated to make the monthly rent payments on behalf of Paradis. Paradis alleges that he is a third-party beneficiary to the lease, and TMG is the only tenant listed on lease; therefore, TMG is required to make the monthly rent payments on his behalf. Defendants allege that they never promised or intended to make the monthly rent payments for Paradis. Instead, they allege that Bauer agreed to help Paradis secure housing because Paradis was having a difficult time qualifying for a lease due to pending bankruptcy proceedings. They state that Bauer and/or TMG agreed only to provide the upfront costs (the $15,000 paid in February 2021) but no other charges associated with the lease. Defendants allege that this is evidenced by Paradis beginning to make monthly payments on the lease starting in April 2021 and continuing through at least September 2022.

In March 2022, TMG terminated Paradis's employment. Paradis alleges that the termination was wrongful and retaliatory after Paradis allegedly confronted Bauer about unlawful business practices. Plaintiffs filed their complaint in April 2022 and moved for summary judgment on their promissory estoppel claim in August 2022 on the grounds that Defendants admitted the underlying facts of the claim in their Answer. (Doc. 31.)[1] In September 2022, Paradis filed a motion for a temporary restraining order and/or preliminary injunction preventing TMG from failing to make rent payments. At that time,

---

[1] Defendants assert that the admission was a typographical error and moved for leave to amend their Answer pursuant to Federal Rule of Civil Procedure 15. (Doc. 35.) Additionally, on October 28, 2022, Plaintiffs filed a Motion to Correct the Record (Doc. 61), explaining that two different versions of the Complaint have been released in this case. At the hearing on this motion, Defendants represented that the confusion caused by the various complaints accounts for the error in Defendants' Answer. In any event, the Court will not decide the likelihood of success on the merits at this stage based on confusion about the pleadings or errors stemming from such confusion.

- 2 -

Paradis did not appear to face an imminent threat of eviction. On or around November 18, 2022, Paradis was served with a summons for eviction proceedings in the McDowell Mountain Justice Court. The proceedings are to take place on November 29, 2022. On November 22, 2022, Paradis filed a supplement with the Court explaining that eviction proceedings are now imminent and requesting that the Court grant him injunctive relief.

## DISCUSSION

### I. Legal Standard

A Plaintiff seeking a preliminary injunction must demonstrate the following factors: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of the equities tips in his favor, and [4] that an injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008)). The Ninth Circuit applies a "sliding scale" or "serious questions" approach to the *Winter* factors. Thus, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies*, 632 F.3d at 1135.

### II. Preliminary Injunction Factors

#### A. Likelihood of Success on the Merits

The likelihood of success on the merits factor weighs in favor of Defendants. "Likelihood of success on the merits is the most important factor; if a movant fails to meet this threshold inquiry, we need not consider the other factors." *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (internal quotations omitted).

Plaintiffs have brought three claims in this case: fraudulent inducement, retaliatory firing, and promissory estoppel. In their Motion for Preliminary Injunction, they do not appear to provide any argument on the likelihood of success of the fraudulent inducement or retaliatory firing claims, instead focusing solely on the promissory estoppel claim. To

1  prove promissory estoppel, Plaintiffs must prove (1) that Defendants made a promise, (2)
2  that Defendants should have reasonably foreseen Plaintiffs would rely on that promise, and
3  (3) that Plaintiffs actually relied on that promise. *Higginbottom v. State*, 51 P.3d 972, 977
4  (Ariz. Ct. App. 2002). Additionally, Plaintiffs "can only recover under the theory of
5  promissory estoppel if [they] had a 'justifiable right to rely' on the alleged promise." *Id.*
6  Promissory estoppel is to be applied "if injustice can be avoided only by enforcement of
7  the promise." *Trollope v. Koerner*, 470 P.2d 91, 99 (Ariz. 1970).

8  Although Plaintiffs argue that Defendants breached their contractual agreements in
9  this case, "[p]romissory estoppel is not a theory of contract liability, but instead a
10 replacement for a contract when parties are unable to reach mutual agreement." *Johnson*
11 *Int'l, Inc. v. City of Phoenix*, 967 P.2d 607, 615 (Ariz. Ct. App. 1998). Thus, "[a]
12 promissory estoppel claim is not the same as a contract claim. Promissory estoppel
13 provides an equitable remedy and is not a theory of contract liability." *Double AA Builders,*
14 *Ltd. v. Grand State Const. L.L.C.*, 114 P.3d 835, 843 (Ariz. Ct. App. 2005). In other words,
15 "a promissory estoppel claim does not arise out of a contract." *Id.*

16 To the extent Plaintiffs' promissory estoppel claim rests on promises made prior to
17 entering the lease agreement or accepting employment with TMG, they have not introduced
18 clear evidence of the promise they claim is breached, let alone detrimental reliance on those
19 promises. Outside of the lease agreement, Plaintiffs introduce one piece of evidence that
20 discusses an agreement regarding the lease. The evidence is a single page screenshot of an
21 email sent by Paul Paradis to a TMG employee where he states that "TMG will be making
22 the lease payments directly." (Doc. 1-3 at 40.) Ultimately, however, Plaintiffs concede
23 that "the only agreement that exists between Defendants and Plaintiff Paradis concerning
24 who was responsible for paying Paradis' housing and utilities . . . is the Residential Lease
25 Agreement at issue here." (Doc. 56 at 4.) Thus, it appears that the Plaintiffs limit their
26 promissory estoppel claim to the promises made in the lease agreement itself.

27 Plaintiffs are not likely to succeed on the merits of their promissory estoppel claim
28 for two reasons: (1) it is not clear that Plaintiffs may bring a promissory estoppel claim

when there is an existing contract, and (2) it is unlikely that Paradis had a justifiable right to rely on a promise to pay the lease.

### 1. Existence of a Contract

"The remedy of promissory estoppel is only available in the absence of a contractual remedy." *Tenney v. Cox Commc'ns*, 2008 WL 4173608 at *2 (Ariz. Ct. App. Mar. 27, 2008). Promissory estoppel is "an alternative to [a] contract claim," and it "affords relief to parties if justice requires it and the requirements for promissory estoppel are met, but some element necessary to the creation of an enforceable contract . . . is not present." *AROK Constr. Co. v. Indian Constr. Servs.*, 848 P.2d 870, 878 (Ariz. Ct. App. 1993); *Kersten v. Cont'l Bank*, 628 P.2d 592, 595 (Ariz. Ct. App. 1981). Further, the remedy under a promissory estoppel claim "may be more limited than damages for breach of contract." *AROK*, 848 P.2d at 849. Here, the Plaintiffs have not shown how their promissory estoppel claim rests on a promise or agreement that lacks the necessary elements of a contract. To the contrary, Plaintiffs repeatedly point to Defendants' "contractual responsibilities" as the basis for this action. (Doc. 49 at 11.) Thus, Plaintiffs are unlikely to succeed on the basis of promissory estoppel because they have not shown why a promissory estoppel claim, rather than a contract claim, is warranted.

To the extent that Plaintiffs try to assert a contract claim based upon the lease, despite the fact that their complaint contains no cause of action for breach of contract, Plaintiffs are unable to demonstrate a likelihood of success on the merits. It is uncontested that after the initial payment in February 2021, TMG did not make any further payments to the Landlord. Paradis made the monthly rent payments to the Landlord from April 2021 to September 2022. Thus, to the extent that the Plaintiffs allege the lease demonstrates an agreement that the Defendant would pay the lease for the balance of its term, regardless of Paradis's actual employment status with TMG, this is belied by the course of the performance of the parties. *Abrams v. Horizon Corp.*, 669 P.2d 51, 57 (Ariz. 1983) (quoting Restatement (Second) of Contracts § 202(4) (Am. L. Inst. 1979)) ("When an agreement involves repeated occasions for performance by either party with knowledge of

the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement."). Even while Paradis remained employed with TMG, Paradis made the lease payments. There is no evidence that Paradis attempted to compel Defendants to make any lease payments or objected to their nonpayment for nearly a year. Plaintiffs, thus, are unable to demonstrate a likelihood of success on the merits on any (presently non-existent) breach of contract claim.

### 2. Justifiable Reliance

Second, it is not clear that Paradis had a justifiable right to rely on a promise to pay the lease for over a year, even after his employment was terminated. "Reliance is justified when it is reasonable, but is not justified when knowledge to the contrary exists." *Higginbottom*, 51 P.3d at 977. Paradis does not introduce any evidence outside the lease itself to demonstrate that Bauer or any other TMG representative stated that TMG unconditionally intended to pay his rent for two years. Defendants contend that TMG only intended to pay the first two months' rent. (Doc. 55 at 2-3.) Moreover, whether or not that was the parties' original intent, Paradis continued to pay his own rent for at least thirteen months before raising any objection. Thus, it is not clear that it was reasonable for Paradis to rely on the lease as a promise to pay his rent when his own actions suggest that it was not.

Further, even if Paradis could have reasonably relied on the lease as a promise to pay during his term of employment, he has not shown that it was reasonable to rely on the lease as a promise to pay his rent even after his employment was terminated. Paradis's offer of employment with TMG does not mention any lease payments. (Doc. 55-1 at 6-8.) Without any further evidence of an agreement between Paradis and TMG, it is likely not reasonable to presume TMG intended to pay over $130,000 in rent payments for Paradis, even if he was no longer employed by TMG. Because Plaintiffs likely do not meet the elements necessary to bring a promissory estoppel claim, the likelihood of success factor weighs in favor of Defendants.

### B. Irreparable Harm

The likelihood of irreparable harm does not favor either party. The Ninth Circuit has held that "the loss of an interest in real property constitutes an irreparable injury." *Park Village Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1159 (9th Cir. 2011). While courts recognize the threat of eviction as a potential irreparable injury, the threat must be specific and imminent. *See, e.g.*, *Volis v. City of Los Angeles Hous. Auth.*, No. CV 13-01397, 2014 WL 12704885, at *3 (C.D. Cal. Jan. 7, 2014) (recognizing eviction as an irreparable harm but requiring the threat to be imminent); *Henson v. McKinley Trailer Village*, No. 1:21-cv-02189, 2022 WL 515691, at *3 (E.D. Cal. Jan. 12, 2022) (finding irreparable harm likely when the record demonstrated a plan to commence eviction proceedings).

Paradis certainly faces the threat of an imminent injury as his eviction proceedings are to take place on November 29, 2022. The remaining question is whether the injury is irreparable. While wrongful eviction can be an irreparable injury, it is not evident that it is here.

First, this case is distinguishable from the cases in which the Ninth Circuit has held that eviction is an irreparable harm. In most of those cases, the Plaintiffs reside in Section 8 housing developments for low-income tenants. *See, e.g.*, *Park Village Apartment Tenants Ass'n*, 636 F.3d at 1152. In *Park Village*, for example, the housing scheme conferred a statutory right to remain on the tenants. *Id.* at 1159. When Defendants intended to change market rates and tenants could not pay market rates, then the threat of eviction created an imminent threat of irreparable injury. *Id.* Here, Plaintiff does not allege any such right to remain. *See Haas v. Bellingham Props., LLC*, 2019 WL 4266810, at *4 (C.D. Cal. Mar. 11, 2019) (finding that even an imminent threat of eviction may not amount to irreparable harm outside the context of the facts in *Park Village*).

Additionally, it is not clear that pecuniary relief is inadequate in this case. *Id.* Plaintiffs' complaint seeks money damages, and Paradis has expressly articulated how much money he believes he has wrongly spent on rent and utilities payments. (Doc. 49 at

8.) *But see Henson*, 2022 WL 515691, at *2 ("[W]hile costs associated with eviction may have a remedy at law, the eviction itself does not."). Paradis's delay in bringing suit also minimizes the potential harm that eviction would cause. While Paradis faces a potential hardship associated with his eviction, that hardship cannot be considered sudden or unexpected. Since April 2021, TMG has never paid the monthly rent payment. Since March 2022, Paradis has not been employed by TMG. And since September 2022, Paradis has alleged that he faces imminent eviction and is no longer able to make the rent payments to prevent his eviction. Thus, while Paradis certainly faces a hardship, it is a hardship he has been able to foresee for several months and take appropriate steps to mitigate.

For the above reasons, while Paradis likely faces some harm in the absence of an injunction, it is not clear that the harm is irreparable. Thus, this factor does not weigh in favor of preliminary relief.

### C. Balance of the Equities

The balance of the equities considers the relative harms to the Plaintiffs and Defendants. As noted in the irreparable harm section, Paradis faces a potential hardship associated with his eviction, but that harm is mitigated by the significant forewarning he received and the likelihood that most, if not all, of his harm could be compensated for in money damages.

Additionally, Paradis is no longer employed by TMG. If the Court granted the injunction, it would require TMG to pay at least $15,000 over the next three months in rent payments for a former employee. Even though TMG is listed as the tenant on the lease, it remains unclear to what extent, if at all, it agreed with Paradis to pay these lease payments. To the extent the lease payments were conditioned on Paradis's employment with TMG, requiring TMG to make payment would cause harm to Defendants.

Because Paradis faces an arguably unquantifiable harm in his likely eviction, and TMG's harm would be purely pecuniary, the balance of the equities might tip slightly in favor of Paradis. Nevertheless, it does not "tip sharply in plaintiff's favor." *Alliance for the Wild Rockies*, 632 F.3d at 1131. Thus, demonstrating only a "serious question" as to

the merits is not sufficient for Plaintiff to obtain an injunction on the "sliding scale" standard. *Id.*

### D. Public Interest

It is also not clear that granting an injunction is in the public interest. First, although Paradis claims "Arizona law favors the issuance of the requested injunction to protect the rights of express intended third-party beneficiaries," this is not a contract law case. (Doc. 49 at 11.) Even if it were, as is explained above, in light of the course of performance, the lease does not indicate the terms of any agreement between Paradis and TMG are sufficient to grant a preliminary injunction. In any event, instead of a breach of contract claim, Plaintiffs seek to bring a claim for promissory estoppel, an equitable remedy. Thus, relying on Arizona's interest in upholding its contract laws does not establish a sufficient public interest for the injunction.

Further, "the usual function of a preliminary injunction is to preserve the status quo." *Miracle v. Hobbs*, 427 F. Supp. 3d 1150, 1164 (D. Ariz. 2019). Neither party debates that after the first month's payment, TMG did not make another monthly rent payment. Both parties agree that Paradis made all the remaining payments that were made on the lease. At this juncture, it is difficult to say that requiring TMG to pay the remainder of the monthly lease payments will preserve the status quo.

Finally, in light of the Plaintiffs failing to meet either the sliding scale or the *Winter* standard if this request is construed as a request for a prohibitory injunction, they necessarily cannot meet the heightened requirements to obtain a mandatory injunction. Although Plaintiffs style their injunction as prohibitory injunction—that is, enjoining the Defendants from failing to pay—the ultimate remedy they request appears closer to a mandatory injunction. A mandatory injunction "orders a responsible party to take action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmBH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). Such an injunction "may not be granted unless extreme or very serious damage will result." *Doe v. Snyder*, 28 F.4th 103, 106 (9th Cir. 2022). Additionally, the damage must not be compensable in damages and the merits of the case must not be doubtful. *See*

*Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017); *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).

Plaintiffs seek an injunction that "orders Defendant[s] to take an affirmative action," so the Court construes it as a mandatory injunction. Because Plaintiffs' likelihood of success on the merits is not clear and Paradis does not show extreme hardship that is not compensable in damages, the motion for preliminary injunction is denied.

## CONCLUSION

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff Paul Paradis's Expedited Motion for Temporary Restraining Order with Notice and Application for Preliminary Injunction and Order to Show Cause (Doc. 49) is **DENIED.**

Dated this 29th day of November, 2022.

_____
G. Murray Snow
Chief United States District Judge